FILED
2014 May-22  PM 02:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| **ALTON JEROME HODGES,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No.: 5:11-cv-3961-AKK** |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **Acting Commissioner of the Social** ) | |
| **Security Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Alton Hodges ("Hodges") brings this action pursuant to Title II of Section 205(g) and Title XVI of Section 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying his claims for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI"). *See also* 42 U.S.C. §§ 405(g), 1383(c). After careful review, the court finds that the decision of the Commissioner is due to be affirmed.

## I.     Procedural History

Hodges applied for DIB and SSI on March 26, 2009 alleging disability

beginning March 17, 2009[1] due to back, leg, and wrist pain, and gout. [R. 180–90]. After the Social Security Administration denied Hodges' claims, [R. 143–47], Hodges requested, [R. 157–58], and received a hearing before an administrative law judge ("ALJ"). At the time of the hearing on April 11, 2011, [R. 96–121], Hodges was 55 years old and had an eleventh grade education, [R. 102]. The ALJ issued a decision on July 8, 2011 denying disability benefits. [R. 16–34]. On September 19, 2011, the Appeals Council denied Hodges' request for review [R. 1–6], making the making the Commissioner's decision final and a proper subject of this court's judicial review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Hodges then filed this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3). Doc. 1.

## II.   Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district

---

[1] Hodges later amended his alleged onset date to March 20, 2009. [R. 211].

court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.   Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). A physical or mental impairment is "an

impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis. 20 C.F.R. §§ 404.1520(a)–(f), 416.920(a)–(f). Specifically, the Commissioner must determine in sequence:

> (1)   whether the claimant is currently unemployed;
> (2)   whether the claimant has a severe impairment;
> (3)   whether the impairment meets or equals one listed by the Secretary;
> (4)   whether the claimant is unable to perform his or her past work; and
> (5)   whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id*. at 1030 (citing 20 C.F.R. § 416.920(a)–(f)). "Once a finding is made that a claimant cannot return to prior work the burden shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, Plaintiff alleges disability because of pain, she must

4

meet additional criteria.  In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th Cir. 1991). Specifically,

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.[2]

*Id*.  However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself. Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself.  *See* 20 CFR §§ 404.1529 and 416.929; *Hale* at 1011.

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added).  Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223.  Therefore, if

---

[2]   This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985).

a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ

must find him disabled unless the ALJ properly discredits his testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ

must articulate reasons for that decision:

> It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true.  Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987).  Therefore, if the ALJ either

fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the

ALJ's reasons are not supported by substantial evidence, the court must accept as true

the pain testimony of the plaintiff and render a finding of disability.  *Id*.

## IV.   The ALJ's Decision

In performing the five step sequential analysis, the ALJ initially determined

that Hodges had not engaged in substantial gainful activity since March 17, 2009, the

alleged onset date,[3] and therefore met step one. [R. 21]. Next, the ALJ concluded that

Hodges has the following severe impairments: degenerative disc disease, knee pain,

and joint degeneration, [R. 21], and consequently met step two. The ALJ also

concluded that Hodges has the following nonsevere impairments: obesity, gout, wrist

---

[3] The court presumes this date is a typographical error as Hodges amended his alleged onset date to March 20, 2009. [R. 211].

pain, anxiety, and mood disorder. [R. 22]. The ALJ then proceeded to the next step and found that Hodges did not satisfy step three because he does not have an impairment or combination of impairments that meets or medically equals a listed impairment in 20 C.F.R Part 404, Subpart P, Appendix 1. [R. 23]. Although the ALJ answered step three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to step four, where he determined that Hodges has the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), meaning Hodges can lift or carry up to 50 pounds on an occasional basis and up to 25 pounds on a frequent basis, can stand, walk, and sit for up to six hours during any given eight hour work period, and has no limitations in his ability to push or pull with the lower and upper extremities. [R. 23]. The ALJ, however, found that Hodges had restrictions in frequent balancing, stooping, kneeling, crouching, crawling and climbing of ramps and stairs, was limited to occasional climbing of ladders, ropes, and scaffolds, and must avoid concentrated exposure to hazards. [R. 23]. Lastly, in step five, based on the Medical-Vocational Rules and Hodges' age, education, work experience, and RFC, the ALJ concluded jobs existed in the national economy that Hodges could perform, including assembler and inspector. [R. 29]. Accordingly, the ALJ determined that Hodges is not disabled, as that term is defined in the Act. [R. 29].

V.    **Analysis**

The court turns now to Hodges' contentions that the ALJ's decision is not supported by substantial evidence and that the ALJ applied improper legal standards by failing to properly determined Hodges' RFC. For the reasons stated below, the court concludes that substantial evidence supports that ALJ's decision and that the ALJ applied proper legal standards in determining Hodges' RFC.

A.    **Hodges' RFC**

The RFC is an assessment based upon all of the relevant evidence of a claimant's remaining ability to do work despite his impairments. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing C.F.R. § 404.1545(a)).  The ALJ must consider any statements by medical sources about what the claimant can still do, whether or not those statements are based on formal medical examinations. 20 C.F.R. § 404.1545(a)(3). The ALJ must also consider descriptions and observations of the limitations resulting from the claimant's impairments, including limitations that result from symptoms, such as pain. *Id.* Only "acceptable medical sources" can provide medical opinions, which are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of" a claimant's impairment, including symptoms, diagnosis and prognosis, what the claimant can still do despite the impairment, and the claimant's physical or mental

8

restrictions. *Id.* § 404.1527(a)(2). The final responsibility for assessing a claimant's

RFC rests with the ALJ. *Id.* § 404.1527(d)(2).

Here, the ALJ determined that Hodges retained an RFC to perform medium

work. [R. 23]. According to the regulations, "[m]edium work involves lifting no more

than 50 pounds at a time with frequent lifting or carrying of objects weighing up to

25 pounds. If someone can do medium work, we determine that he or she can also do

sedentary and light work." 20 C.F.R. § 404.1567. Social Security Ruling 83-10

provides further detail, stating in pertinent part:

> The regulations define medium work as lifting no more than 50 pounds
> at a time with frequent lifting and carrying of objects weighing up to 25
> pounds. A full range of medium work requires standing or walking, off
> and on, for a total of approximately 6 hours in an 8-hour workday in
> order to meet the requirements of frequent lifting and carrying objects
> weighing up to 25 pounds. As in light work, sitting may occur
> intermittently during the remaining time. Use of the arms and hands is
> necessary to grasp, hold, and turn objects, as opposed to the finer
> activities in much sedentary work, which require precision use of the
> fingers as well as use of the hands and arms.
>
> The considerable lifting required for the full range of medium work
> usually requires frequent bending-stooping (Stooping is a type of
> bending in which a person bends his or her body downward and forward
> by bending the spine at the waist.) Flexibility of the knees as well as the
> torso is important for this activity. (Crouching is bending both the legs
> and spine in order to bend the body downward and forward.) However,
> there are a relatively few occupations in the national economy which
> require exertion in terms of weights that must be lifted at time (or
> involve equivalent exertion in pushing or pulling), but are performed
> primarily in a sitting position, e.g., taxi driver, bus driver, and tank-truck

driver (semiskilled jobs). In most medium jobs, being on one's feet for most of the workday is critical. Being able to do frequent lifting or carrying of objects weighing up to 25 pounds is often more critical than being able to lift up to 50 pounds at a time.

Social Security Ruling (SSR) 83-10.

Hodges submits that the ALJ's conclusion that he could perform medium work is contrary to the evidence. [Pl.'s Mem. 13; 15]. However, Hodges' allegation is completely conclusory as he points to no specific evidence supporting his argument.[4] Hodges has likely waived this issue for his failure to elaborate on the claim or provide specific authority regarding the claim. *See N.L.R.B. v. McClain of Georgia, Inc.*, 138 F. 3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citations to authorities, are generally deemed to be waived."). Nevertheless, the court has examined the record and finds that substantial evidence supports the ALJ's RFC determination.

## B.   Hodges' Treatment History

The record shows that Hodges received treatment on seven different occasions

---

[4] Hodges does suggest that the ALJ should have concluded he is disabled pursuant to the Medical Vocational Guidelines at 20 C.F.R. Part 404 Subpart P, Appendix 2, Rule 201.14 or 201.01. [Pl.'s Mem. 12]. However, as Hodges admits in the very next sentence of his brief, the Medical Vocational Guidelines only apply if the ALJ had found Hodges limited to sedentary work. [Pl.'s Mem. 12]. Without providing any detail or citing to any specific portion of the record, Hodges maintains that the evidence supports a finding that Hodges was limited to sedentary work. However, as explained *infra*, the ALJ's RFC determination is supported by substantial evidence; therefore, the ALJ properly applied the Grid rules and determined that Hodges satisfied the conditions set for in the Grids for a finding of "not disabled" regardless of the transferability of any job skills.

at Decatur Primary Care from October 2005 through July 2007. [R. 281–87]. Treatment notes track Hodges' complaints of back pain and high blood pressure. [R.283; 286]. Although examination notes are difficult to read, they indicate Hodges failed to take his blood pressure medication regularly. [R. 282; 284]. During a visit on October 10, 2006, Hodges denied any complaints. [R. 285].

Hodges sought primary care from Mark Murphy, M.D. as early as January 3, 2006. [R. 581]. At this time, Hodges reported low back pain, and treatment notes indicate that an April 2005 MRI showed mild disc bulging at L4/5 and an annular tear. [R. 581]. Dr. Murphy diagnosed Hodges with degenerative disc disease, gout, and degenerative joint disease in his knee. [R. 581]. The next visit to Dr. Murphy occurred on January 26, 2009, during which Hodges completed a pain questionnaire and indicated that at its worst over the past month, his pain level was a four or five, and two or three after medication. [R. 521]. When Hodges returned in March 2009, he reported his pain level at its worst over the past month was a four or five. [R. 497].

During a visit on May 18, 2009, Hodges described his overall pain with treatment as a six on a ten point scale. [R. 339]. Examination notes indicate muscoloskeletal "arthritis, gout, and stiffness." [R. 339]. Hodges reported being depressed and stressed but stated that Xanax helped. [R. 339]. Dr. Murphy refilled Hodges' medications. However, an addendum dated May 19, 2009 indicates that after

11

a consultation with a Dr. Kirk L. Jackson, Dr. Murphy's office called and left Hodges a voice message instructing Hodges to stop all medication and to seek mental health services before resuming his dosages. Dr. Murphy cancelled Hodges' refills, which caused Hodges to return to Dr. Murphy's office questioning why his refills were cancelled. Hodges stated that he did not get the phone message. [R. 341]. Dr. Murphy had reviewed medical records from Decatur General Hospital documenting a stay on April 29, 2009, during which Hodges had "a deterioration in his mental status, to the point where he was threatening to shoot the nurses."[5] [R. 341; 420–22].  Hodges claimed that he never threatened to hurt anyone. Dr. Murphy prescribed Hodges' medications on a weekly basis pending a psychological evaluation or "AA documentation." [R. 342]. Dr. Murphy indicated plans to release Hodges and prescribe no further medications or treatments if he received no updates within 30 days. [R. 342].

Hodges saw Dr. Murphy again on June 29, 2009, during which treatment notes indicate muscle spasms and tenderness along Hodges' spine. [R. 348]. During the visit, Hodges completed a pain questionnaire. [R. 483]. On a ten point scale, Hodges indicated that his pain at its worst during the last month was a four, that after taking

_____

[5] A consulting physician at the hospital examined Hodges after this episode and found that he was suffering from acute delirium. [R. 421].  The physician also concluded that Hodges was suffering from psychosis but he was uncertain whether this is new or old due to medication influence. [R. 421].

his pain medication the pain level was a two or three, that his average level of pain during the previous month was a four, and that his current pain level was a three. [R. 483]. Hodges returned on July 27, 2009. However, the examination notes from this visit contain no substantive information.

On August 24, 2009, Hodges reported that his pain level post-treatment was a two. [R. 514]. In November 2009, Hodges reported to Dr. Murphy that his pain in his wrist had increased and that he could no longer use a can opener or screw tops. [R. 568]. According to a pain questionnaire filled out during this visit, Hodges indicated that his average level of pain over the past month was a seven; however, treatment notes state that Hodges' overall level of pain post-treatment was a four. [R. 568]. Treatment notes from a December 14, 2009 visit indicate that Hodges was tolerating pain management with no side effects and that Hodges was "pleased with his meds." [R. 562].

Hodges continued to see Dr. Murphy in 2010. The first visit occurred on January 12, 2010, during which Dr. Murphy's examination notes indicate that Hodges' level of pain with treatment was a two or three. [R. 553]. Hodges completed a pain questionnaire during this visit and stated that at its worst, his pain level over the previous month was a four. [R. 531]. His average level of pain was a three or four. [R. 531]. Hodges desired no treatment changes during this visit. [R. 553]. Dr.

13

Murphy's records indicate that Hodges was released from care in February 2010. [R. 525]. However, Hodges returned for a follow-up visit in July 2010, [R. 525], during which he stated that he was told he detoxed and did not need the medications he was previously prescribed. [R. 525]. Upon examination, Dr. Murphy refilled Hodges' Lortab, Soma, and Xanax.

The final entry from Dr. Murphy occurred on March 9, 2011, during which Hodges filled out a pain questionnaire and indicated that at its worst, his pain level over the past month was a six or seven. [R. 579]. With medication, Hodges reported his pain level was a four. [R. 579]. He also indicated that his average level of pain during the previous month was a four or five. [R. 579].

In addition to Dr. Murphy, Hodges also sought treatment at the emergency room. In early 2009, Hodges reported to the emergency room at Decatur General Hospital on at least four occasions. [R. 288–338]. First, on January 6, 2009, Hodges complained of left wrist pain, denied any recent injury, and treatment notes indicate swelling. [R. 328]. At the time, Hodges could not close his left hand, and reported that he had been on antibiotics, which had helped the swelling initially. [R. 328]. Hodges was prescribed three medications including Bactrim and Lortab. [R. 330]. Second, on March 23, 2009, Hodges complained of back pain and right knee pain. [R. 320]. Although difficult to read, treatment notes appear to indicate that no additional

14

medication was prescribed. [R. 322]. Third, on April 11, 2009, Hodges returned to the emergency room and requested that doctors refill his blood pressure prescriptions, [R. 315], which the doctors provided after examining Hodges. Finally, in May 2009, Hodges complained of heartburn and nausea. Doctors performed an abdominal procedure to remove an obstruction. [R. 294–95; 306–11].

On January 27, 2010, Hodges was admitted to Decatur General Hospital and treated for an opiate overdose. [R. 402]. Hodges reported taking three tablets of Lortab. [R. 402]. Doctors provided IV fluids and oxygen. [R. 402]. Hodges was discharged in alert condition and instructed to follow up with Dr. Murphy. [R. 402]. In April 2010, Hodges returned to the emergency room at Decatur General Hospital and requested refills of his blood pressure medication. Doctors prescribed the requested refills. [R. 399].  Subsequent emergency room records show that Hodges presented on February 22, 2011 with right writs pain and swelling. Doctors diagnosed him with right hand cellulitis/gout arthropathy. On March 12, 2011, Hodges was seen for left ankle and foot pain. Impressions included narcotic and benzodiazepine use, drug intoxication, and altered mental status. [R. 585–603].

C.     **Consultative Examinations**

Marlin Gill, M.D. performed a consultative physical examination on September 18, 2009. [R. 349–51]. Hodges complained of low back pain. He told Dr. Gill the pain

15

was not constant and that it happened "off and on at different times unexpectedly." [R. 349]. Hodges reported that the pain was worse if he was overactive or stood or walked for too long. [R. 349]. Hodges stated that his knee hurt whenever he stood or walked. [R. 349]. Hodges also reported that he had neck pain that would generally occur if he turned his head quickly. [R. 349]. Upon examination, Hodges was in no distress. Dr. Gill saw no indentations or scars indicating a previous halo. Hodges' eyes, ears, neck, chest, and abdomen were all normal. Hodges walked with a normal gait and unassisted. [R. 350]. Hodges' neck was non-tender, although he complained of discomfort with neck movement. Hodges used his arms normally with no limitations and demonstrated a full range of motion in his joints. [R. 350]. Hodges could close his right hand into a full fist with grip strength of 5/5. Hodges could fold his left hand into a full fist with grip strength of 4/5. [R. 350]. Hodges' back appeared "normal" and no tenderness was observed. [R. 350]. From a standing position, Hodges could bend forward 90 degrees and return to an erect position with no difficulty. Hodges' legs appeared normal and symmetrical with good muscle tone. Hodges' right knee appeared "normal" and showed no signs of swelling or joint effusion. [R. 350]. Holding the exam table, Hodges could squat and return to a standing position. [R. 351]. Dr. Gill diagnosed Hodges with low back pain-reported history of bulging discs, right knee pain-undiagnosed, and neck pain-reported history

16

of neck fracture in September 2007. [R. 351].

On September 24, 2009, state agency decision maker, M.K. Fendley, completed a Physical RFC Assessment. [R. 352–59]. After reviewing Hodges' medical records, Findley opined that Hodges has the following exertional limitations: he can occasionally lift and/or carry 50 pounds and he can frequently lift and/or carry 25 pounds; he can stand and/or walk (with normal breaks) for a total of six hours in an 8-hour work day; he can sit (with normal breaks) for a total of six hours in an 8-hour work day; and, he has no restrictions in his ability to push and/or pull. [R. 353]. Regarding postural limitations, Findley opined that Hodges can frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl but can only occasionally balance. [R. 354]. Findlay found no manipulative or communicative limitations. Regarding environmental limitations, Findlay found that Hodges should avoid concentrated exposure to hazardous machinery and heights. [R. 356].

Barry Wood, Ph.D., completed a consultative mental examination on October 6, 2009. [R. 360–62]. Dr. Wood noted that Hodges received his first psychiatric treatment in prison 12 years earlier. [R. 361]. Hodges received some medication for three to four years to treat depression, and he participated in counseling. [R. 361]. Hodges reported that his psychiatric/behavioral status deteriorated after his brother was shot and killed in 1997. Hodges had taken Xanax throughout the past six years.

Hodges denied any history of substance abuse issues. [R. 361]. He described his mood as "blessed" and indicated that he was sleeping normally. [R. 361].

Dr. Wood noted that Hodges was oriented and that his mood fell within normal limits. He was prosocial and cooperative. [R. 361]. Based upon his academic history, command of general information during the interview, and command of vocabulary, Dr. Wood suggested that Hodges' IQ was in the average range. [R. 361]. Dr. Wood diagnosed Hodges with recurrent major depressive disorder that was currently in remission (with medication) and panic disorder without agoraphobia (in remission with medication). [R. 362]. Dr. Wood noted that Hodges' Global Assessment Functioning ("GAF") score was 82. [R. 362].

Dr. Wood concluded that Hodges' reports suggested that his past psychiatric symptoms were currently controlled with medication. [R. 362]. Dr. Wood opined that he believed Hodges is able to function independently, understand instructions, recall instructions, and follow instructions to the extent allowed by his physical status. [R. 362]. Dr. Wood further opined that he believed Hodges could attend to tasks for at least two consecutive hours. [R. 362]. Dr. Wood also indicated that Hodges possesses the social skills necessary to interact with coworkers, customers, and supervisors. [R. 362].

Finally, on October 6, 2009, Robert Estock, M.D. completed a Psychiatric

Review Technique. [R. 363–76]. Dr. Estock found no "Paragraph B" limitations. [R. 373].

## D.    Physical Capacities Assessment

Hodges' treating physician, Dr. Murphy, completed a Physical Capacities Assessment ("PCE") and a Clinical Assessment of Pain on April 4, 2011.[6] [R. 605–07]. Dr. Murphy opined that Hodges can lift and/or carry 20 pounds occasionally and 10 pounds frequently, that Hodges can sit and stand for four hours in an 8-hour work day, that Hodges does not require an assistive device to walk in a normal work day, that Hodges can frequently push and pull, and engage in gross and fine manipulation, can occasionally climb stairs or ladders and balance, bend, and reach (including overhead), and that Hodges could operate a motor vehicle but should avoid hazardous machinery and dust, allergens, and fumes. [R. 605]. Dr. Murphy also opined that Hodges' pain is present to such an extent as to be distracting to adequate performance of daily activities of work, and that physical activity would greatly increase Hodges' pain, and to such a degree as to cause distraction from tasks or total abandonment of tasks. [R. 606]. Dr. Murphy also commented that Hodges' medication may present some side effects upon his ability to perform work activity but not to such a degree to cause serious problems in most instances. [R. 607]. Based

---

[6]    Hodges submitted this evidence after the ALJ's decision, and the Appeals Council considered it in denying Hodges' request for review. [R. 1–6].

in part on Dr. Murphy's PCE, Hodges contends that he is disabled.

### E.   ALJ's Evaluation of Medical Evidence

The ALJ properly considered the objective medical evidence in making his RFC determination. The ALJ referred to Hodges' May 2009 hospitalization to surgically repair his bowels and noted that upon discharge he recovered without incident and ambulated without difficulty. [R. 24]. His surgeon limited Hodges to lifting no greater than 10 pounds for one month only. [R. 417]. Other records from Decatur General Hospital indicated that Hodges had normal ranges of motion, no neurologic deficits, and no swelling. [R. 391; 401; 411; 430; 469; 475]. The ALJ also noted that 2010 discharge notes indicate that Hodges purposefully overdosed on Lortab but was found to have no outward symptomatic limitations upon his release home. [R. 25].

The ALJ also reviewed Dr. Murphy's treatment notes. The ALJ noted that during his visits, Hodges self-rated his pain level at a two or three on most occasions. [R. 24], that Dr. Murphy's examination notes contain general findings of "L Spine MM spasm, TP and tender, RSIJ positive and LSIJ positive," [R. 340; 348; 481; 496 503; 510; 515; 520; 526; 529; 538; 544; 551; 554; 563; 569; 577], and that Dr. Murphy followed Hodges for a great part of the alleged period of disability but never

suggested that Hodges had any other impairment-borne limitations,[7] [R. 24].

The ALJ then discussed Dr. Gill's consultative examination findings, which noted that Hodges reported non-constant back pain, no recommendation that he undergo surgery, and that Hodges discussed proficiency in activities of daily living during his examination. [R. 24]. During the examination, Dr. Gill observed that Hodges had a normal gait and that he walked around the room without use of a cane. [R. 24]. Finally, the ALJ noted Hodges' examination revealed full range of motion and strength, and the ability to use his extremities fully with no limitations. [R. 24].

The ALJ also commented on Dr. Wood's consultative psychological examination findings that Hodges' major depressive disorder and anxiety were in

---

[7] Hodges submitted new evidence to the Appeals Council consisting of Dr. Murphy's PCE and Clinical Assessment of Pain. [R. 1; 4–5; 605–07]. These forms are dated April 4, 2011–seven days before the hearing. [R. 96–121; 605–07]. In his PCE, Dr. Murphy opined that Hodges had restrictions that would preclude medium work (i.e., that Hodges could only lift and/or carry up to 20 pounds occasionally). [R. 605–07]. The Appeals Council stated that it had considered the new evidence but found it did not provide a basis for changing the ALJ's decision. [R. 1–2]. On appeal, Hodges challenges only the ALJ's decision and not the Appeals Council's decision denying review after considering the new evidence. [Pl.'s Mem. 12–16]. Therefore, the court is not required to examine Dr. Murphy's PCE or Clinical Assessment of Pain. *See Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998) ("[W]hen the AC has denied review, we will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence."); *see also Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1265–66 (11th Cir. 2007). (clarifying *Falge* and distinguishing cases where a Plaintiff also appeals the decision of the Appeals Council to deny review, and stating "[w]e understand *Falge* to hold that when a claimant challenges an administrative law judge's decision to deny benefits, but not the decision of the Appeals Council to deny review of the administrative law judge, we need not consider evidence submitted to the Appeals Council."). Because Hodges did not challenge the Appeals Council's decision to deny review, this court need not consider Dr. Murphy's PCE and Clinical Assessment of Pain. *See Falge*, 150 F.3d at 1323; *Ingram*, 496 F.3d at 1265–66.

remission. [R. 25]. Dr. Wood also found that Hodges had the social skills necessary to interact with co-workers and supervisors and that his memory, processing, and overall cognitive functioning were within normal ranges. [R. 25].

After considering the objective medical evidence, the ALJ also documented the opinion evidence he evaluated to determine Hodges' RFC. [R. 25]. See SSR 96-8p, 1996 WL 374184, at *5 (noting that in assessing the RFC, an ALJ may consider medical source statements). The ALJ must "state with particularity the weight given different medical opinions and the reasons therefor." *Sharfarz v. Bowen*, 816 F.2d 278, 279 (11th Cir. 1987). In reviewing this opinion evidence, the ALJ noted that he assigned "particularly persuasive weight" to the two consultative examiner's reports. [R. 27; 349–50; 360–62]. Although not treating sources, Dr. Gill's and Dr. Wood's opinions may be entitled to "great weight." *See* 20 C.F.R. §§ 404.1527(c), 416.1527(c); SSR 96-2p, 1996 WL 374188, at *2 (1996). The ALJ accorded these opinions "persuasive weight " because they were consistent with the medical evidence in the record that demonstrated Hodges could ambulate without assistance and could use his extremities fully and without any limitation. [R .27]. The ALJ also noted that these opinions were consistent with other test results and treatment notes suggesting Hodges had no significant musculoskeletal limitations. [R. 28].

The ALJ also considered Hodges' credibility in making his RFC determination.

Although Hodges does not challenge the ALJ's credibility assessment, the court has reviewed the record and finds that substantial evidence supports the ALJ's decision to reject Hodges' subjective complaints regarding the intensity and persistence of his symptoms and their effect on his ability to work. When evaluating the credibility of a claimant's statements regarding the intensity, persistence, or limiting effects of his symptoms, the ALJ considers: the objective medical evidence; the claimant's daily activities; the location, duration, frequency, and intensity of the pain symptoms; factors that precipitate or aggravate the symptoms; type, dosage, and effectiveness of medication; side effects of medication; treatment received; measures used to relieve pain; and any conflicts between the claimant's statements and the medical evidence of record. *See* 20 C.F.R. §§ 404.1519(c)(3)–(4), 416.929(c)(3)–(4); SSR 97-7p, 1996 WL 374186, at *3, *5–6.

Here, the ALJ found that Hodges' medically determinable impairments could reasonably be expected to cause the alleged symptoms. [R. 26]. However, the ALJ concluded that Hodges' statements regarding the intensity, persistence, and limiting effects of the symptoms were not entirely credible, [R. 13], and offered specific reasons for this finding. Specifically, the ALJ rejected Hodges' alleged pain and range of motion limitations as inconsistent with and contradicted by the medical evidence of record. The ALJ noted that Dr. Murphy's treatment notes that indicate

23

Hodges' self-reported pain level never exceeded a four. [R. 27]. The ALJ also considered Dr. Gill's examination findings that Hodges could walk, perform motion drills, and had full or near full strength. [R. 27]. The court concludes the ALJ properly rejected Hodges' complaints as inconsistent with the record as a whole. *See* 20 C.F.R. §§ 404.1519(c)(4), 416.929(c)(4) (noting that, in assessing credibility, the ALJ will consider conflicts between a claimant's statements and the remainder of the record).

The ALJ also appropriately considered Hodges' activities of daily living. The ALJ noted that Hodges could function independently and could engaged in a wide range of activities. [R. 27]. For example, Hodges reported that he could do laundry, sweep, dust, take out small bags of trash, and prepare simple meals. [R. 25; 234–36; 361]. Hodges also reported that he visited friends and family and shopped. [R. 25]. The Eleventh Circuit has commented that "participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability. *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11 th Cir. 1997). Moreover, courts have recognized that a claimant need not be bedridden in order to be disabled. *See Bennett v. Barnhart*, 288 F. Supp. 2d 1246, 1252 (N.D. Ala. 2003). However, the ALJ is expressly permitted to consider activities of daily living in making a credibility determination. *See* 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i); *Dyer v. Barnhart*, 395 F.3d 1206, 1208, 1212 (11th Cir. 2005) (consideration of claimant's

activities of daily living, including limited housework, driving short distances, and reading the paper, was permissible as part of credibility determination).

The court finds that the ALJ's rationale for rejecting Hodges' subjective complaints of disabling pain provides the specificity required to withstand any allegations of error. The ALJ is the sole determiner of credibility. *Daniels v. Apfel*, 92 F. Supp. 2d 1269, 1280 (S.D. Ala. 2000) (citing *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971)). Consequently, the court should not disturb a clearly-stated credibility finding unless substantial evidence does not support it. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). The ALJ's assessment of Hodges' credibility is clearly articulated and corroborated by substantial evidence in the record. Therefore, the court concludes that substantial evidence exists to support the ALJ's conclusion that Hodges' testimony of disabling pain is disproportionate to the objective medical evidence

In sum, the court finds that the ALJ's RFC determination, based upon consideration of the objective medical evidence, the opinion evidence, and Hodges' credibility, is based upon substantial evidence. Accordingly, the Commissioner's decision is due to be affirmed.

## VI.   Conclusion

The court concludes that the ALJ's determination that Hodges is not disabled

is supported by substantial evidence and that proper legal standards were applied. Therefore, the Commissioner's final decision is due to be affirmed. A separate order in accordance with this memorandum opinion will be entered.

Done this 22nd day of May, 2014.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE